The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good afternoon, everyone. We are here to hear argument in the case of Nick Pearson v. Target v. Randy Nunez and this is the appeal of Theodore Frank. And we will begin with Mr. Bednarz. Thank you, Your Honor. Good afternoon and may it please the Court, I'm Frank Bednarz on behalf of Appellant 10 Frank. Your Honors, in Pearson's case, the Court remanded so that Mr. Frank could make his case. And on the Court below, everything that he, Mr. Bednarz, excuse me, but I'm having a lot of trouble hearing you, Mr. Bednarz. It's a little choppy. Yes, Your Honor, I'm getting some feedback too, or you're just having a harder time hearing me. That was better just then. Yeah. Sorry, this is the Clerk. I just muted the other attorneys for now. I think there was some feedback coming back. So if we leave James and John mute right now, just until while Frank's speaking, that would be best. Thank you. So, in the District Court on remand, Mr. Frank made his case. Everything we alleged on information and belief was true. In fact, they had received side payments, the three appellant objectors. They received these payments, even though they had no particularized claims of their own, and the class settlement was not in any way improved. Mr. Bednarz, let me start you out because there's very little time. If you were giving a course to judges about how to distinguish legitimate objectors from those just looking for a payout, what would your description look like? After all, Buckley, for example, objected to the amount of attorney's fees, just as you did, and he claims that he wanted a better deal for the class. How might a judge distinguish his intent from yours? Your Honor, we contend that the intent is not the important consideration. Whether the objector at the time of the objection wrote a fabulously detailed objection or, as in this case, wrote four and three-page objections, and whether they intended to benefit the class or not is not something that judges can easily discern. In any rate, the better rule is the one that creates the best incentives. That is, the ones where objectors who do have the incentive to proceed with their appeal and where, if an objector only seeks a payoff, they would not be inclined to object because upon the district court, under the amended Rule 23, would discern that there had been no improvement to the underlying settlement. So the subjective— So are all settlements on appeal that don't yield an overall improvement automatically sanctionable? No. And Safeco is an excellent example of that because in Safeco, the objector, who was actually the original class plaintiff, Liberty Mutual, had very substantial individual claims against the defendant. And in this case, none of the objector appellants proved that they were in any way dissimilar from other class members. They were trading off of only their own claims in form. They were trading in actuality on the value of the underlying settlement. Well, I don't know. I mean, let me tell you two things that bother me about your position. One, I can't, as Judge Rovner's implying too, I can't figure out what lines we're supposed to draw because it seems to me you're really arguing for a position that any time an objector settles an objection on appeal, the district court should be obliged to disgorge that money. And that seems too broad to me. The other thing that bothers me is that this is at Rule 60 stage of the case. This is not a brand new thing. And the standard for showing error is an enhanced one under Rule 60. And you were given the opportunity, of course, to go under Rule 60d6. That's what Pearson 2 gave you. But I don't see in the nature of at least the two objectors who are here what's so extremely wrong. The district court may have used some strong language about how significant a problem you're looking for. But what was so out of line that it requires the equitable remedy of disgorgement? Well, Your Honor, the line that we would draw is when private benefit is gained in exchange for claims that are common to all class members. Why were these claims, why if, in essence, let's take the claim about the attorney's that we have, Mr. Buckley, you know, he says the $60,000 was largely simply to reimburse his lawyer for making an effort to improve that. Now, it wasn't a successful effort. But I don't know why that is so morally reprehensible that equitable disgorgement is called for. Well, it's objectionable for the same reason that was raised in Buckley's four-page objection, which is he was objecting to class counsel getting paid for time that supposedly did not benefit the class. And you objected to the same thing, right? We objected that some of the fees, we objected in essence that $180,000 should be deducted from class counsel's fees. But you earlier had been objecting to the amount that class counsel was going to receive if we go all the way back to Pearson 1. Right. You know, there's an implication in your brief on page 20 that the defendants are not the ones who paid the objectors. Am I reading that correctly? Am I correct? You are correct. And Buckley didn't address this peculiarity. It's cited in the record. We were very coy about it in the opening brief because the record at Target's insistence was under seal. But in fact, the defendant asked the plaintiff's counsel to forfeit $22,500 of their fees as a contribution toward this settlement with these objectors. So it's not in fact the case, as Buckley says, that the original settlement agreement proofed by the court was left intact. There was, in fact, a contribution by plaintiff's counsel as well. Is there any reason why that part of the record remains under seal? Oh, no. You know, no. The entire appendix was unsealed, and we think that that's appropriate. Okay. If we would agree that the side payment here was improper, why should the remedy be payment to the class rather than return of the payments to the defendants? Well, because the entire amount paid by the defendant is constructively a common fund for resolving the underlying claims. See, I don't understand that point at all because it seems to me the end of your logic is that the entire net worth of the defendant might be payable to the class. And even though the defendant, as here, first decides $7.5 million, then maybe even in some quite unrelated litigation, it's willing to pay a little more. You just keep adding it on and on. And I don't know why that's a rational inference. Well, it's like this court found in Pearson 1 that the entire amount of consideration that the defendant was willing to pay was willing to quiet these claims. These appeals were not being paid for their own claimants. For example, Mr. Buckley says that if he had opted out, he could have reached the settlement with the defendant. But of course he couldn't. He had purchased a small number of bottles of these pills and the defendant in that case, because there wasn't the massive leverage of a $7.5 million settlement hanging in the balance, the defendant in that case would have said, well, we offer you a stipulation of judgment for $75 or whatever the retail value is. And that would be the value of Buckley's claims as an opt-out. That's why Buckley, Nunes, Sweeney, all of them are really trading on the strength of the underlying settlement and the value to defendant to quiet all of the claims. And that's why- I understood part of the response to that to be, in essence, the idea that defendants now have to approach class settlements with the notion that there's going to be an objector's tax imposed, or at least that that's a significant risk going forward if they try to settle. And I understand your proposal to be to try to capture that up front for the class. Could you give us an idea of how you think your rule would work in practice under amended rule 23E5 with the requirement that an objector specify whether the objections are being raised on behalf of the class as a whole, individually, or a subset of the class? Excellent question. Under the amended rule, it's appropriate that objectors mark whether their objection is to them individually or the class. And the reason for that is that class-wide claims are the sort that can hold up final approval implementation of the settlement. And those are the sorts of objections that can create this sort of tax. And I should emphasize, it's not necessarily the case, you know, we use the words coercion and blackmail, but it's not necessarily the case that the objectors went out seeking this. In some ways, it's almost more perverse that based on Buckley's filings, he thought that there was a possibility to reduce fees by a very large amount, a million dollars, and that yet by the defendant peeling off a very small, almost nuisance value, he was able to get rid of that objection. Where does the fiduciary duty come? What's the either, you know, Supreme Court case or the source of the fiduciary duty that an objector owes to the class as a whole? The objector, of course, hasn't gone through the Rule 23A for criteria, not to mention Rule 23B, all of the scrutiny that goes to the named representative. The objector has, until the objection is raised, simply been an unnamed member of the class. So where does this fiduciary duty come from? In Young v. Higbee, it's termed at least a duty of good faith. But in Young v. Higbee, we're talking about bankruptcy reorganization, we're talking about the Chandler Act, there are significant statutory differences, and the court did locate the fiduciary duty it found there in the statute. So, I mean, it says, well, we're not going to specify completely, but it's at least a duty of good faith. But it's very much, as I read that case, very much driven by the statute. And so what do we have here? We don't have the Bankruptcy Code or the Reorganization Act. What do we have? Well, the statute in Young v. Higbee didn't imply the duty of good faith. Instead, it was the incentive structure. It was the ability for individual claimants in the bankruptcy to file claims, to prosecute claims on behalf of an entire class of people that had identical claims because they held similar classes of debt. Right. And that was the only reason they had an ability to speak up, whereas an objector is an individual actor, very much like an opt-out is an individual actor. And remember, Young v. Higbee is long before the 1966 amendments to Rule 23. There is no such thing as the modern class action at that time. The court's dealing with a very different legal structure. That's true, Your Honor. But in Young v. Higbee, it says that equity looks to substance and not merely to form. And in the substance here, objectors have the same sorts of incentives to press class-wide claims that the classes of debtors had in Young v. Higbee. So let me ask you a quick question before you sit down. I know you're about in your rebuttal time. If this case were replicated and came up now, now that Rule 23 has been amended, would there be any problem at all? Or has the amended Rule 23 really, going forward, solved the things that you're talking about? No, this case is very important because amended Rule 23 does not provide substance about how to measure such side payments. If the district court was affirmed here, it would do a lot of harm to the amended rule because the district court found, inappropriately, that this allows class settlement to become final. And every payoff, every side deal from an objector appeal does the same thing because settlements are structured that they don't go into effect until all the appeals are resolved. So if this is a benefit, every possible imaginable side deal would cause the same benefit, and it would make the amended rules into a dead letter. And with that, I have reserved the rest of my time for rebuttal, Your Honors. And that is what you, I mean, of course, our standard is abuse of discretion, correct? In this case, the district court made errors of law in concluding that we needed to prove that there was a violation of a law or a statute or a rule. But we filed a... Go ahead, Your Honor. Sorry. And in that way, he abused his discretion. Is that your bottom line? Well... He abused his discretion, in other words, your bottom line is because he made an error of law. That was the abuse of discretion. Right. Yes. I'm sorry, Your Honor. Yes. Okay. Okay. Thank you. All right. We will move to Mr. Pence now. Thank you, Your Honors. This is John Pence on behalf of Appellee Stephen Buckley. I think Mr. Frank is reading far too much into this court's 2018 decision, which merely gave him the right to have his motion heard by the district court. It did not forecast the outcome. It did not even endorse Mr. Frank's characterization of what constitutes a object of blackmail. I know that Mr. Frank quotes that portion of this court's decision throughout his brief, but in that portion, and this court was merely paraphrasing Mr. Frank's argument to the court. And even in Mr. Frank's formulation, it required that the appellant have no intention of improving the settlement. And that's simply not the case here. Mr. Pence, our appellate courts, and thus class members, disadvantaged by not having the benefit of objectors' arguments to the appellate court, when those objectors bail out of the appeal so quickly. Well, Your Honor, certainly there's, and my client and I believe that we had a strong chance of prevailing in our appeal, however, and we did not seek a settlement. We did not contact any opposing party, especially the defendant, since we could not imagine why the defendant would have any interest in our appeal. But when that offer was made, I was bound to pass it along to my client, and my client decided that he would like to accept it. You know, it seems to me that these private, well, that another one of the disadvantages of these private settlements is that there isn't a judge or a magistrate helping clients determine whether the division, the division of that settlement between attorney's fees and the client's share seem reasonable. I mean, I realize that this is true in any private settlement, but don't you think it is particularly problematic in these large-scale class action objector cases? I mean, I'm struck by the fact that you claimed 78 hours of legal time for a four-page objection and a 3,000-word draft of a Seventh Circuit brief to be perfectly, you know, blunt with you. Well, there was also opposition to an appeal bond. There was a supplemental briefing of the attorney's fees. But I, you know, I understand what Your Honor is saying. This was not all that much work. On the other hand, you know, I think it was a relatively modest number of hours. But your larger question is, don't you think a judge should oversee this? Well, going forward, certainly district court judges will. And in this case, essentially, Mr. Frank and the class got the benefit of as if Rule 23E5 were being applied retroactively because the district court judge did take a look at this, including the division of the settlement between attorney's fees and the payment in the form of essentially an incentive award to my client. And he found no problem with that. So in general, was that a problem in the past? Possibly. Going forward, it won't be. And regardless of the outcome of this case, those things will be scrutinized in the future. Suppose the defendant was on shaky financial grounds. And it was unclear whether after these private settlements were paid, there would be sufficient funds to fulfill the class action settlement. Would your position change as to possible harm to the class? Well, yes. In that factual scenario, possibly, although I can't imagine a settlement that hadn't already been funded by the time the district court entered the final judgment. I don't know. I think the better Think about times and the companies that have lost billions, billions, companies that are going bankrupt. Yes. If a defendant's survival were necessary for the class to participate in the settlement relief, such as with a coupon settlement or with injunctive relief, yes, then that would be an argument that these side settlements imperiled the company's survival. But, you know, that's not the case here. Target was not on the verge of bankruptcy and had plenty of money to fund. Yes, I'd like to ask you about the structure of incentives and fiduciary duties here. If Mr. Buckley's objection had been successful and had improved the settlement for the class, I take it you would think it would be reasonable to seek an award of fees for having obtained that benefit? Correct, Your Honor. Yes. And that would be from the common fund? Yes, it would be from that portion of the common fund that was retrieved. And on what theory? Well, the theory would be the same. It's Trustees v. Greenock. It's a benefit conferred on parties that were not represented by me or my client. But your position is that you are entitled to seek that kind of a benefit without undertaking any sort of fiduciary duty on behalf of that class. Is that right? Yes, that's correct. I believe a benefit conferred is what gives you the right to seek attorney's fees based on a common theory, whereas it's the undertaking of a duty when you file a complaint and allege that I'm representing not just my lead plaintiff, but a class of like-situated... I understand the general premise, but what I have trouble with is understanding why somebody asserting such a claim on behalf of the class should be able to settle it privately without benefit to the class. I read Young v. Higby pretty broadly as having, despite its specific statutory provisions, it dealt with general equitable principles of unjust enrichment. If we look at restatements, if we look at Young, you step up, you assert a common good, and then you settle for a private payment. What's wrong with imposing a fiduciary duty on the settlement of that claim that you're asserting on behalf of all those other people? Well, such a rule would preclude appellate settlements effectively, I think, in class action cases. You'd have a duty to see the appeal through and have it decided, and then if you were successful... Or settle it in a way that benefits the class, or not bring it in the first place, because there's no possibility of a private benefit. Well, correct, and if I had settling with class counsel, I would have sought a portion of the benefit that my client was seeking on appeal. But because this was the defendant, a target that contacted me and sought a settlement for reasons that remain unknown to me, the only deal that they were offering is to pay your client a small amount of money and compensate your lodestar, and that was the offer. And my client accepted that offer, and I was, you know, unlike Mr. Frank, whose clients swear off any right to a private settlement on their behalf, you know, my client and my relationship was not the same as that. All right, I think you have reached the end of your time, so we will thank you and move on to Mr. Patterson. Thank you, Your Honor. Mr. Patterson? May it please the Court, Jim Patterson on behalf of Randy Nunez. I don't want to rehash everything in our papers, but I think it is very important for the Court to understand that our client was in a much different position than Mr. Buckley. My client filed a separate class action in the Southern District of California way back in 2013. Right, and I cannot tell you how confused I am about parts of your argument. It almost sounds as though you are arguing that the District Court in the Northern District of Illinois had some obligation to follow an order of the District Court in the Southern District of California, or that the District Court in Illinois could not settle a case because of a separate case in California. Am I misunderstanding your argument? I think a little bit, Your Honor. Our primary argument is that the defendant in this case, or more specifically the defendants in our case, had been ordered by an independent court in the Southern District of California to only hold settlement negotiations with us as appointed interim class counsel. And so we're certainly not saying that the District Court in Illinois was bound or unable to issue its own independent rulings. What we're saying is that the party, the defendant in this case, was bound by that order. Now, my objection to the Northern District or the Illinois Court was simply that you should, you know, that you should recognize the separate order from this independent court. Well, then my understanding is absolutely correct. So, but let me ask, did you think you were going to be the only person at the table or were you looking for a seat at the table with some sort of comedy to the Southern District of California? I had thought you were just looking to be included along with everybody else who the Northern District of Illinois wanted to see there. Certainly, we would have been more than happy to simply be included. And I'd point out that the settlement that ultimately was approved by the Illinois Court was a broader settlement. It included more defendants and more claims. So we wouldn't have been the only ones at the table. I think it's important that if you take a step back and look at the landscape of the case at the time that we moved to be appointed interleague counsel, it's telling. This is right on the heels of the Pierson 1 settlement that this court eviscerated as being a selfish deal between class counsel and the defense. Following that order from this court, we moved to be appointed interleague counsel. Are you asking us to take your word for it that the settlement agreement, which does not have a single word referencing the California litigation, actually does refer to the California litigation? Well, absolutely, Your Honor. The whole point of our objection and appeal was to protect the interests in the other case that was pending since 2013. And the defense attorney in open court in front of the district court in Illinois admitted that the failure to include a reference to the case was merely a drafting error on her part. But we had substantial discussions leading up to resolving the Southern District of California case. And if you read— Okay, so we have to take your word because, you know, Frank claims that the district court's because either—and I'm going to quote—Nunes sold out the Nunes class by dismissing an objection that had cause, or he abused the legal system to bring a meritless objection solely to benefit himself. How do you respond to what Mr. Frank's claims? Well, Your Honor, first of all, if you read the release in the settlement agreement we entered into, it clearly would encompass the Southern District of California case. So specifically, you know, as part of the settlement, we released all actions based on any theory related to the Pearson action. I mean, that just—there's really no question that that would cover the separate action that was pending in the Southern District of California. Now, I want to point out, had we not agreed to this, and had we either dismissed the appeal or lost the appeal, we would have moved for sanctions in the Southern District of California for—against the defendant for violating the order appointing us interim class counsel. So we had a remedy to do that, and the defendant didn't want that to happen. We talked about that, and ultimately we decided to settle the separate case pending in the Southern District of California. It was implicit in the dismissal of the appeal. If you read the appeal, the sole basis of the appeal was we were objecting that they didn't have—the defendant didn't have the right to do what it did, and the purpose of it was to protect the interests of the other case. And, you know— The class in the other case? It would have been the—well, I'm not sure if our appointment as interim class counsel would survive once the Illinois court certified the class for settlement and resolved all of the class member's claims. So, to be honest, I haven't completely thought through that, but certainly I think going forward as a policy—and this was raised in the papers—that, you know, it's not a good policy when you have competing cases to have interim class counsel appointed in one case and create a situation where there's an incentive to reverse auction the case to the other attorneys who are not interim class counsel. And we never said that that happened, by the way. Mr. Frank, in his papers, indicated that we had accused them of a reverse auction. We didn't say that. We said that what could happen, if this is allowed to stand in the future, you would have that exact situation where once— Mike, Mr. Patterson, Mike, excuse me, but my concern is that your theory for objecting was to protect the ability of the class or the punitive class in the California case to go forward. And the settlement was entirely for the benefit of Mr. Nunez. So, Your Honor, when we filed our appeal, there had already been other appeals filed and we understood there would be additional appeals, which there would have been four, challenging the, you know, other aspects of the settlement, including the attorney's fees. And had any of those—I don't want to say that our appeal was a tag-along appeal, but at the time that we filed it, there was a possibility, and we assumed, frankly, that Mr. Frank was going to object and appeal the fees again and perhaps even the compensation. And had any of those been successful, then we wanted our issues to be heard as well. And it turned out, I got a call from defense counsel telling me that everyone, including Mr. Frank, had agreed to settle and resolve their appeals, which put us in a situation where we felt like there was no benefit to the class in continuing because we had no issue with the class compensation that was being received. At that point, we decided to resolve our case in the Southern District. Again, I'll point out our other option would have been, had we not resolved it, is I would have filed a motion in the Southern District of California, and we would have sought sanctions for our costs and fees associated with our, you know, our role as interim class counsel and the defendant's failure to abide by the order that they were willing to negotiate with us, or that they at least had to include us in the negotiation. All right. I think you're out of time, Mr. Patterson. So, unless either of the other judges has any more questions, we will return to Mr. Bednarz. I'll think of it as two minutes, Mr. Bednarz. Thank you, Your Honor. Contrary to what Buckley's counsel said, it would not preclude all settlements. In the first place, you could dismiss an appeal for no private gain. It was concluded that your claims were not as strong or you didn't have enough time. You could simply dismiss an appeal if you weren't able to prosecute it. But moreover, the way that we believe that such appeals should be handled under the amended rules is that if you are able to convey a benefit, that you ought to, in this case, for example, say that they had settled to add $130,000 to the common fund with the proviso that the objectors could apply for fees from that additional funding. Mr. Patterson made reference that his case is different, and it is different because they represented a class-action plaintiff, and a class-action plaintiff definitely has a fiduciary duty under this circuit's law and under the law generally. It's not even merely the duty of due care from a young behavior, and they had a duty not to harm the class's interest. Can I go back to the amended rule for a minute? Because as Judge Hamilton pointed out, the amended rule seems to contemplate objectors making any of three different types of objections, some entirely personal, some for a specific subset, some for the entire class. So I take it you're only talking about class-based objections, that an objector might have an individualized objection in a case. I'm not saying it's this case, but in some cases. Yes, Your Honor, that's where Young v. Higbee is analogous, when it's a class-wide objection. If it's an individual, that's another way that an objection could be settled. If it was individual claims, if Plaintiff Nunes had been shoved down the stairs or something and also released his claims to target, and it's not a silly hypothetical because that's something like what happened in Safeco, where the named plaintiff had very multi-million dollar claims that were separate from the class claims. We fought this settlement. We got awarded $180,000 from going from an $800,000 common fund benefit to a basically $4 million benefit. And these three objectors provided zero benefit and got almost as much in attorney's fees as we did. If the lower court's order stands, it creates a perverse incentive to bring bad-faith objections, whether or not they intended to bring them at the time they were filed. Unless the court has further questions, we would stand on our briefs. All right. I see none, and your time is up. So thank you very much to all three of you. The court will take this case under advisement.